## Case No. 13,951.

### THOMPSON v. CLARKE.

[2 Cranch, C. C. 145.] [1]

Circuit Court, District of Columbia. Dec. Term, 1817.

**SLAVERY—MANUMISSION BY WILL—RENUNCIATION OF PROVISIONS BY WIDOW—EFFECT ON MANUMITTING CLAUSE.**

If a testator by his will manumits his slaves after a certain term of service, and the widow renounces the provision made for her by the will, and adheres to her rights under the law of Maryland, and there is sufficient personal estate to satisfy her thirds without resorting to the slaves, they will be entitled to their freedom, although the executor shall have assigned them to the widow in part satisfaction of her claim.

This was a petition for freedom [by Jo. Thompson, a negro, against Walter Clarke]. John Thompson by his will dated December 31st, 1804, devised, that if his wife should not have a child within nine months after his death, the petitioner, his slave, should be free after ten years service. The widow renounced the provision made for her by the will and adhered to her legal rights; and the executor assigned to her the petitioner in part of her thirds, there being other personal property enough to satisfy her claim without resorting specifically to the slaves. Those assigned to her did not exceed her proportion of the slaves. By the Maryland act of 1798, c. 101, subc. 13, § 2 [1 Dorsey's Laws, 406], the widow who renounces the provision made for her by the will is entitled to one third only of the personal estate after payment of debts. By the Maryland act of 1796, c. 67, § 13 [1 Dorsey's Laws, 337], a person may manumit his slaves by his will, if the same be not in prejudice of creditors. By the act of 1798, c. 101, subc. 11, § 16, if the surplus, after payment of debts, consists of specific property, and the administrator cannot distribute it satisfactorily among the parties, the orphans' court may distribute it, or order it to be sold. By the act of 1729, c. 24, § 2 [1 Maxoy's Laws, 197], it is enacted that no negro, or other slave shall be sold by an executor or administrator, or taken in execution for any debt due from any testator or intestate, so long as there shall be other goods sufficient, &c.

Mr. Taney and Mr. Key, for petitioner, con-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

tended that the right of the widow was not absolutely to a third part of the specific property; but only one third in value of the personal estate. That the surplus of the personal estate vests specifically in the executor on whom the legal title and estate of the personal property devolves by law, and he is answerable to the respective legatees. That if the slaves had been specifically bequeathed, and there had been other property enough left to satisfy the widow's thirds, the rights of the specific legatee would be protected, and the executor could not assign to the widow any part of the property thus specifically bequeathed. That the slaves must be considered as specific legatees, and their rights protected by the same principle. They cited Jac. Law. Dict. tit. "Dower," to show the distinction between dower and thirds, and that the widow had no specific title to the property; and 3 Bac. Abr. tit. "Executors and Administrators," p. 67, to show that the assent of the executor was necessary to complete the title to a legacy; and page 426, to show that when a specific legacy is taken in execution the legatee may recover the value.

Mr. Jones, contra, contended that the rights of the widow were paramount to the will. The testator, in his lifetime, might dispose of all his personal estate, but he could not, in his will, deprive her of her thirds. She claims as a distributee. As to her, her husband died intestate. Distributees have a right to the specific property which is to be distributed; and it is to be distributed specifically if possible. They cannot be compelled to take the risk of any loss which may be incurred by a sale. The legatees have no right to have the effects marshalled to suit their purposes. A general legatee cannot marshal against a devisee of land, but may against the heir at law. Herne v. Meyrick, 1 P. Wms. 201; Clifton v. Burt, Id. 678; Haslewood v. Pope, 3 P. Wms. 324. So a widow shall have the assets so marshalled as to save her bona paraphernalia, or to recompense her, in case they should be taken to pay debts. Tipping v. Tipping, 1 P. Wms. 729. In that case Lord Chancellor Macclesfield said: "I take it that bona paraphernalia are not devisable by the husband from the wife, and more than heir-looms from the heir; so that the right of the wife to the bona paraphernalia is to be preferred to that of a legatee. If the husband, by his will, gives a lease, or a horse, or any specific legacy, and leaves a debt by mortgage or bond, in which the heir is bound, the heir shall not compel the specific legatee to part with his legacy in ease of the real estate; but though the creditor may subject this specific legacy to his debt, yet the specific or any other legatee shall, in equity, stand in the place of the bond creditor or mortgagee, and take as much, out of the real assets, as such creditor by bond or mortgage shall have taken from his specific or other legacy. Wherefore, if a legatee shall have this favor in equity, much more shall the wife

be privileged with respect to her bona paraphernalia which are preferred to legacies." The wife's thirds are as much privileged as her paraphernalia. They cannot be devised away from her. She claims paramount to the will. In the case of Snelson v. Corbet, 3 Atk. 369, Lord Chancellor Hardwicke said: "At law. where the husband dies indebted, the widow cannot have her paraphernalia; but this court does not determine so strictly, for if the personal estate has been exhausted in payment of specialty creditors, she shall stand in their place, as to so much, upon the real assets of the heir at law. for she has a prior right, and a superior one to legatees who take only from the bounty of the testator." Graham v. Londonderry, 3 Atk. 395; Tynt v. Tynt, 2 P. Wms. 544; Toll. Ex'rs, 231.

THE COURT (nem. con.) stopped Mr. Key in reply, and refused to instruct the jury that the petitioner was not entitled to freedom under the will.

Verdict for the petitioner, and judgment. Although the title of several other of the slaves depended upon the same will, no writ of error was issued. See the case of Fenwick v. Chapman, 9 Pet. [34 U. S.] 461, accord.